**NORTH AMERICAN CO. v. LANDIS et al.***

**AMERICAN WATER WORKS & ELECTRIC
CO. v. SAME.**

Nos. 6654, 6655.

United States Court of Appeals for the
District of Columbia.

Decided June 22, 1936.

*Writ of certiorari granted 57 S. Ct. 30, 81 L. Ed. —. Decree reversed 57 S. Ct. 163, 81 L. Ed. —.

F. D. McKenney, John S. Flannery, G. Bowdoin Craighill, and John E. Larson, all of Washington, D. C., and John C. Higgins, of New York City, and Joseph P. Tumulty, of Washington, D. C., for appellants.

Homer S. Cummings, Robert H. Jackson, Benjamin V. Cohen, and Robert E. Kline, Jr., all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

This is a special appeal from an interlocutory order of the Supreme Court of the District of Columbia staying further proceedings in plaintiffs' suits against the appellees, defendants below. The order staying further proceedings in these suits was passed to await final determination by the Supreme Court of the United States in the case of the Securities and Exchange Commission v. Electric Bond and Share Company et al., now pending in the District Court of the United States for the Southern District of New York, or until such time as the case is otherwise terminated.

These suits are for injunctions to restrain the defendants, on the ground of unconstitutionality, from enforcing the provisions of an act of Congress approved August 26, 1935, Public, No. 333, c. 687, title 1, 74th Cong., 1st Sess., 49 Stat. 803, 15 U.S.C.A. § 79 et seq., entitled, "An Act To provide for control and regulation of public-utility holding companies, and for other purposes." The plaintiffs are holding companies of the class which is required by the act to register with the Securities and Exchange Commission not later than December 1, 1935. Plaintiffs have not registered, and in their bills declare their intention not to register.

The North American Company filed its bill on November 26, 1935, and the American Water Works and Electric Company, Incorporated, filed its bill the next day. The bills invoke the equitable jurisdiction of the court because of irreparable injury which it is averred the act is already causing plaintiffs, and which plaintiffs will continue to suffer in ever increasing measure until final relief is afforded. The bills set forth fully the basis of the court's jurisdiction, the nature and character of plaintiffs' business, the provisions of the act applicable to the plaintiffs, the grounds for plaintiffs' belief that defendants intend to enforce the act against them, the reasons why plaintiffs are irreparably damaged through the threatened enforcement against them by defendants of the provisions of the act, that this damage will be sustained whether plaintiffs register under the act or not, and the reasons why, in the judgment of the plaintiffs, the act is unconstitutional.

Simultaneously with the filing of the bills in the plaintiffs' cases, the Securities and Exchange Commission, hereinafter referred to as the Commission, filed a bill against the Electric Bond & Share Company and five of its corporate subsidiaries in the United States District Court for the Southern District of New York. That case will be hereinafter referred to as the Bond & Share Case. At approximately the same time that plaintiffs filed their bills, some 48 other bills were filed in the various United States District Courts by other companies seeking substantially the same relief as that sought by the plaintiffs, and at about the same time, and prior to December 1, 1935, five other holding companies filed bills in the Supreme Court of the District of Columbia, seeking substantially the same relief sought by the plaintiffs.

On December 7, 1935, before any answer had been filed by the defendants herein, or by the defendants in any of the above-mentioned suits in the federal District Courts, or by the defendants in the Bond & Share Case, the defendants herein moved for a stay of proceedings to await the final determination of the Bond & Share Case. The grounds advanced in support of the motion for the stay were the pendency of the above-mentioned 48 suits in the federal courts; that the Commission had instituted the Bond & Share Case for the purpose of determining the constitu-

tionality of the act, and that it would be prosecuted with all due diligence to the Supreme Court; that the other pending suits would "tend to clog the courts, overtax the facilities of the Government, and make against that orderly and economical disposition of the controversy that is the Government's aim."

On hearing the court sustained the motion in the following order:

"This cause coming on to be heard upon motion of the defendants to stay further proceedings herein filed December 7, 1935, the Court having considered the pleadings and the arguments of counsel, and briefs having been submitted herein, it is this 9th day of January, 1936:

"Ordered, adjudged and decreed, that further proceedings herein be and are hereby stayed, upon the terms and conditions as set forth in the Opinion of this Court in this cause filed herein the 6th day of January, 1936."

In the course of his opinion the court called attention to the grounds upon which plaintiffs opposed the motion for the stay, to the tender of the defendants to submit to a temporary injunction pending a decision by the Supreme Court in the Bond & Share Case, and to the contention of plaintiffs "that many of the questions as to the constitutionality of the act involved in these cases are not involved in the Electric Bond and Share Case, and that even if the defendants were temporarily enjoined the plaintiffs would in the meantime suffer irreparable injury by the existence of this act upon the statute books, which would affect the validity of their contracts, their transfer of stocks, and other similar matters."

The court then said:

"In the instant case the relief sought by the plaintiffs is first a relief by injunction against the defendants, and second a declaratory judgment to the effect that the Public Utility Holding Company Act violates the Constitution of the United States and that the Act and each and every part thereof is invalid, null and void. * * *

"'* * * Courts do not declare statutes constitutional or unconstitutional as such. The judicial function is to determine whether or not under the facts proven at the trial, the application of the legislative enactment to the litigant before the Court invades his constitutional rights.'"

We think, from an examination of the bills in the present cases and the bill in the Bond & Share Case, which appears in the record, that many questions arise in the instant cases which would not and could not be disposed of in the Bond & Share Case. The sole question, therefore, for our consideration is whether or not the court below was justified in granting the stay in these cases; whether or not in so doing the court abused its discretionary power in the control of its docket.

Unquestionably a court has wide discretionary power in the matter of the order in which cases pending on its docket shall be tried, provided always that undue delay is not occasioned, to the damage of litigants. This power extends to the determination of which of two cases, pending in the same court or in courts of similar jurisdiction and involving the same issues and the same parties, shall be first heard, but this situation does not obtain in the present controversy. These cases are pending in courts of different jurisdictions, the parties are not the same, the issues involved are not such that the determination of one case would constitute a full determination of the others, nor are there present any of the conditions which would justify depriving plaintiffs of their day in court and an opportunity to be heard. Their bills have been filed, and without even an answer on the part of the defendants, or the bringing of the cases to issue, which might tend to clarify the issues involved, plaintiffs have been deprived, by an order of the court, of their day in court and an opportunity to be heard. They have been stopped in limine and denied the privilege of proceeding further for an indefinite period of time, subject to all the uncertainties surrounding the final determination of the Bond & Share Case.

The stay cannot be justified on the ground that the decision in the Bond & Share Case may "simplify" the issues or furnish a "valuable precedent" for the determination of the present cases. Indeed, from a comparison of the bill in the Bond & Share Case with the bills in the instant cases, it is difficult to conclude that a decision of the Bond & Share Case would dispose of all the issues in the present cases. In Rosenberg v. Slotchin, 181 App.Div. 137, 138, 168 N.Y.S. 101, 102, the rule is stated as follows: "It is only where the decision in one action will determine all the ques-

tions in the other action, and the judgment on one trial will dispose of the controversy in both actions, that a case for a stay is presented. Dolbeer v. Stout, 139 N.Y. 486, 489, 34 N.E. 1102; Ogden v. Pioneer Iron Works, 91 App.Div. 394, 396, 86 N.Y.S. 955; Consolidated Fruit Jar Company v. Wisner, 38 App.Div. 369, 375, 56 N.Y.S. 723."

The Rosenberg Case is also authority for the rule that under no circumstances will a stay in an action be granted until the issues are made.

It is urged that the issues of law in plaintiffs' cases will be greatly simplified by the determination of the Bond & Share Case. "Such a conflict, if it exist, is no valid ground for the staying of the plaintiff's proceedings; nor is there any warrant for such a stay to be found in the uncertainty of the law on any question, however unsettled the law and conflicting the decisions." Jenkins v. Baker, 91 App.Div 400, 402, 86 N.Y.S. 958, 959.

Where it appears that a party whose suit is sought to be tried has no remedy against his adversary except in the court in which he has brought his action, the opposing party, not having answered or brought the case to issue, is in a poor position to plead for delay. Nor is the plea of the Department of Justice in the present case that it is not equipped to handle the numerous cases which have arisen, because it is involved in other litigation, a valid ground for a blanket stay in limine of all further proceedings in the present cases for an indefinite and protracted period.

The government of the United States as a litigant has no greater rights than the humblest citizen. While we recognize the difficulty which confronts the Department of Justice in conducting the vast amount of litigation in which the various agencies of the government have become involved, as well as the duty of the courts to be indulgent where possible in the public interest, yet the rights of the citizen are not to be overlooked. He is entitled to be heard in the courts in defense of his rights, if he honestly believe that they have been invaded to his damage, even by an agency of the government. These rights may not be disregarded, to the damage of the litigant, because of any question of mere governmental convenience or public interest, and

the discretion of the court should not be swayed by any of these considerations so as to deprive the litigant of his day in court and a prompt and speedy trial.

While it is true that a court of equity has wide discretion, in the public interest, in the exercise of its jurisdiction, yet it may not stay its hand because of such interest if by so doing private rights will suffer. Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841, 96 A. L.R. 1166. That the rights of the plaintiffs in the present cases would suffer by reason of the stay granted is apparent, since the very existence of the act, whether they register under it or not, must of necessity affect materially the conduct of their business during the pendency of these suits.

The order is reversed.

GRONER, Associate Justice.

Very shortly after this suit was begun, the Attorney General filed in the trial court a motion to stay proceedings. In the motion he said that there had been filed in ten District Courts of the United States at least forty-eight bills of complaint in behalf of 147 plaintiffs, all of which similarly sought to enjoin the enforcement of the Act of Congress approved Aug. 26, 1935, known as the "Public Utility Holding Company Act of 1935." The Attorney General informed the court that he was anxious to secure an early determination of the constitutionality of the act, and to that end he had had the Commission institute a suit in the Southern District of New York against Electric Bond & Share Company and that the suit would be prosecuted with due diligence to secure from the Supreme Court an authoritative determination of the validity of the act. On the ground that the pending suits would clog the courts and overtax the facilities of the government and militate against an orderly disposition of the controversy, he asked the court to stay proceedings in the instant case. The Attorney General offered to submit to a temporary injunction pending a decision by the Supreme Court in the Electric Bond & Share Case. The court, after hearing, entered an order staying all proceedings pending a decision by the Supreme Court, on condition that the Bond & Share Case be diligently prosecuted.

On this appeal the question for our decision is whether the lower court had the right and power to enter the order, and, if it had the power, whether the entry of the order in the form in which it appears was an abuse of discretion.

Undoubtedly a federal District Court may grant a stay in a cause pending before it and may enter such other orders as may be necessary to control the progress of the cause in the interest of justice. Ordinarily such orders are within the sound discretion of the court. A stay of proceedings is sometimes granted for the accommodation of counsel, sometimes because of the absence of witnesses, sometimes because of illness on the part of counsel or witnesses, sometimes to avoid a multiplicity of suits, sometimes to avoid a conflict of jurisdictions, and perhaps for other grounds which do not occur to me at the moment—all of which show that the right exists. But in every instance that I know of in which a stay has been asked and opposed, the right, where it has been exercised, has been exercised with caution and with the assurance on the part of the court that the rights of the plaintiff will not suffer by the delay. Any other course would be obstructive of justice.

Here the learned judge of the lower court points out that the defendants have offered to submit to a temporary injunction pending a decision by the Supreme Court in the Electric Bond & Share Case; and this, he says, will afford just as full relief as a decision in this suit holding the challenged act of Congress unconstitutional. If, from an examination of the record, I could say that the court's conclusion in this respect were correct, it would be difficult to find any reason for disturbing the order; but I think the conclusion is not sustainable. As is stated by Judge VAN ORSDEL, there is a marked difference between many of the issues in this case and in the Bond & Share Case due primarily to a different corporate setup; and careful examination of the act and of the purposes of the two suits shows that, even though the act of Congress may be constitutional as to the Bond & Share Company, it may be unconstitutional as to these plaintiffs; in short, that a decision in the one case will not foreclose all questions in the other. Nor is there doubt that the provisions of the act, even if they ultimately be held unconstitutional, seriously affect the business and affairs of these plaintiffs pending the determination of that question. In that view they are clearly entitled to a speedy trial. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." Marbury v. Madison, 1 Cranch 137, at page 163, 2 L.Ed. 60. But I mention these matters merely in passing. In my opinion the order entered by the lower court is not such a stay order as a court ought ever to enter as a matter of discretion. It is substantially an injunction against these plaintiffs, preventing them for an indefinite period from litigating a question of legal rights which they insist the act of Congress unlawfully impairs. If, instead, the stay had been temporary, if the court had announced that it would not set the case for trial except at the reasonable convenience of the parties, I would think its action well within its discretion. But here we are confronted with an order restraining litigants from prosecuting their case, grounded upon the theory that, because it would seriously inconvenience the Attorney-General to try a number of cases at one time, a selection may be made and the others suspended, not temporarily, for that in the circumstances would have been reasonable and proper, but indefinitely, even where the parties are different and the rights and interests not identical.

In addition to all of this, the motion was made without bringing the case to issue. No answer or pleadings of any kind in defense have been filed. The order was entered at the very threshold of the court. In any case, this is premature. The trial court should require defendants to bring the case to issue and then, if the circumstances are such as indicate that no harm will be done in a reasonable postponement of the trial, it may very well be that the court, in the exercise of its discretion, can delay the trial temporarily; in other words, take such action in relation to the progress of the cause on its own docket as may then seem to it equitable and fair. But the present order goes beyond that limit, and in that respect was improvidently entered.

STEPHENS, Associate Justice (dissenting).

I am unable to agree that the trial court abused its discretion. The facts, as I understand them, are these: The appellants (plaintiffs below, and hereinafter called plaintiffs), the North American Company

and the American Water Works and Electric Company,[1] public utility holding companies, each filed a suit in the Supreme Court of the District of Columbia seeking to enjoin enforcement of Title 1 of the Public Utility Act of 1935, 15 U.S.C.A. § 79 et seq. (hereinafter referred to as the "Act"), alleging threats of enforcement by the appellees (defendants below, and hereinafter called defendants), the members of the Securities and Exchange Commission, the Attorney General, and the Postmaster General; and the plaintiffs sought a declaratory judgment that the Act, in all of its parts, was unconstitutional. They had refused to register under the Act, thereby subjecting themselves, so they asserted, to grievous prohibitions against, and penalties upon, divers of their business activities. But they said also that if they did register, they would become subject to regulation, control and reorganization, pending ultimate dismemberment and destruction under Section 11 (15 U.S.C.A. § 79k), the so-called death sentence provision, of the Act. They asserted further that the existence of the Act clouded title to their investments, interfered with their freedom of contract and injured their credit—all to their irreparable damage. Five other similar suits had been filed by holding companies against the same defendants in the Supreme Court of the District of Columbia. In ten or more other Federal courts in various parts of the United States, forty-nine additional similar suits had been filed against agents of the Securities and Exchange Commission, United States District Attorneys, representatives of the Post Office Department, and the defendants in the instant cases. But for lack of personal service upon the latter, it was not unlikely that these suits, or many of them, would be brought to a conclusion by either dismissal or default, and that in their stead new suits would be filed in the Supreme Court of the District of Columbia. On or about the same date that the plaintiffs' suits were filed, the Securities and Exchange Commission commenced, in the United States District Court for the Southern District of New York, a suit against the Electric Bond and Share Company and five of its principal subsidiaries; and there were later by supplemental bill of complaint brought into that suit sixteen more members of the Electric Bond and Share Company system. The New York suit was brought under Section 18 (f) and Section 18 (g) of the Act, 15 U.S.C.A. § 79r (f, g), to compel the defendants to register and to restrain them from activities prohibited in the absence of registration. It was a test case comprehensive in nature.

In these circumstances, the defendants in the instant cases moved to stay all the proceedings relating to the validity of the Act until its validity had been determined by the Supreme Court of the United States in the New York suit, or until that case otherwise terminated. This motion was supported by oral and documentary representations which, for the purposes of this appeal, were by stipulation embodied in an affidavit and exhibits made a part thereof (including the bill of complaint and the amended and supplemental bill of complaint in the New York suit). In substance these representations were that: There would be a substantial identity of issues in the local suits and in the New York suit; all of the suits were complex; the local suits would require extensive investigations of fact at great expense in both funds and time before answers could be formulated and filed; the preparation and trial at the same time of the local suits and the New York suit would overburden the Commission and its counsel; the trial of the local suits would overburden the Supreme Court of the District of Columbia. In moving for the stay the defendants offered the following terms: They would not enforce the Act as against the plaintiffs until it had been determined to be constitutional by the United States Supreme Court in the New York suit, and then only in respect of acts or omissions thereafter occurring; and they would submit to a temporary injunction against enforcement of the Act.

The motion for a stay was resisted by the plaintiffs upon the grounds, in substance, that: The issues in the local suits and in the New York suit would not be the same; even if the defendants were subjected to an injunction, still the existence of the Act would injure the plaintiffs' business in the manner asserted in their bills of complaint. To the latter ground the defendants rejoined that no more prompt determination of the constitutionality of the

---

[1] The full names of the companies are "The North American Company" and "American Water Works and Electric Company, Incorporated."

Act was probable in the local suits than in the New York suit.[2]

The problem thus presented to the trial court by the motion to stay and the plaintiffs' opposition thereto was administrative in nature, not substantive, that is to say, it was one which a court decides according to its discretion, rather than under a rule. Where a court acts by rule, it can decide but one way without error. But where its decision is according to discretion, it may decide in either of two (and sometimes more) ways without disturbance of its ruling on appeal—provided its decision is actuated by proper and adequate representations or data, and is not unreasonable in respect of the rights concerned.

Were the representations and data before the trial court proper and adequate? The points especially urged in support of the motion to stay were the complexity and burdensomeness of the local and the New York suits, and the substantial identity of issues therein. As to the former: The contents of the affidavit of the Attorney General and of the bills of complaint in the several causes were, I think, sufficient to inform the court of the nature of the suits and to warrant it in concluding that they would be complex and burdensome in respect not only of the requisite preparation but in respect also of the time required for trial. Indeed, there was no substantial dispute on this topic except that the plaintiffs offered to reduce the local litigation to a few test cases. But the court was not bound to conclude from the representations on this subject that this was within the power of the plaintiffs. As to the substantial identity of the issues: In the technical sense the pleadings were not closed, that is to say, at the time the motion to stay was presented to the trial court, no answers had been filed in either the local suits or the suit in New York. But it is to be borne in mind that the stay was not asked for upon the ground that a decision in the New York suit would, in the technical sense, be *res judicata* as to the local suits. This it could not be, for lack of technical identity of parties. The proposition advanced was that the rulings in the New York suit would be practically fruitful to simplify, if not to dispose of, the local litigation. In this view, I think formal answers are not the only data which a court may properly consider in reaching a conclusion. It may consider oral representations and documents, apparently informative and reliable. Such data the trial court had before it through the Attorney General, counsel for the Commission and the plaintiffs' counsel. It would serve no useful purpose to set forth in detail the data, oral and documentary, which, it appears from the record and briefs, was thus presented to the trial court. Briefly, however, it included material informing the court that: The plaintiffs are parent public utility holding companies; they own stock—more than 10% of the voting securities [3]—in subsidiaries; some of the subsidiaries are themselves holding companies, and some are operating companies; the holding subsidiaries themselves own stock in holding companies and operating companies. The business of the systems (so far as is relevant to the litigation) is the production and marketing of electricity and gas. This is transmitted across state lines by the operating companies which are subsidiary to the holding companies which are themselves immediately subsidiary to the parent holding company. Service, sales and construction contracts (forbidden by the statute in the absence of registration) involving interstate commerce exist in the plaintiff North American Company system between at least one holding company immediately subsidiary to the parent on the one part, and its subsidiaries on the other. Similar service, sales and construction contracts exist between the plaintiff American Water Works and Electric Company, the parent itself, and its subsidiary operating companies; and at least one immediate holding subsidiary of the American Water Works and Electric Company has entered into service, sales and construction contracts with its subsidiary operating companies. Neither of the plaintiff parent com-

---

[2] The defendants further rejoined that they had made widespread public announcement that the Act would not be enforced until the determination of its constitutionality by the United States Supreme Court in a test case, and had instructed the agents of the Commission, District Attorneys, and postmasters throughout the United States to such ef-

fect; and that in these circumstances, or if the temporary injunction were imposed, the plaintiffs could present no case or controversy for determination of the constitutionality of the Act in respect of its mere existence.

[3] It is such ownership that, under the Act, constitutes a company a holding company.

panies nor any of the companies within their systems has registered.

In the New York suit the defendant Electric Bond and Share Company is a parent public utility holding company; it owns stock in subsidiary holding companies; each of these is the parent of a system comparable in character and extent to the system of which each of the plaintiffs is a parent; these holding companies immediately subsidiary to the parent Electric Bond and Share Company, or a part of them, severally own stock in holding companies and in operating companies. The last mentioned holding companies, or a part thereof, in turn severally own stock in holding companies, which latter again own stock in operating companies. The business of the system (so far as is relevant to the litigation) is the production and marketing of electricity and gas. This is transmitted across state lines by the operating companies. All of the above mentioned companies, holding and operating, or such of them as typify the structure and activities described, are defendants in the New York suit. Service, sales and construction contracts involving interstate commerce exist, in the Electric Bond and Share system, between a company immediately subsidiary to the parent Electric Bond and Share Company, and a company immediately subsidiary to that subsidiary, on the one part, and the holding companies immediately subsidiary to the parent, and their operating subsidiaries, on the other. Neither the parent Electric Bond and Share Company nor any of the companies within its system has registered. The local suits and the New York suit were brought for the purpose of testing the constitutionality of the Act in all of its parts, in respect of the activities of the systems, and of the units thereof, respectively involved.

With such information before it concerning the local suits and the New York suit, and especially in view of the common object of the suits, I think the trial court could reasonably conclude that the New York suit would probably yield rulings as to the constitutionality of the Act and its parts, as to the separability of the parts, as to what is interstate commerce for electric and gas public utility holding companies—whether acting through immediate subsidiaries or through those more remote in the corporate structure—as to the constitutionality of the registration provision as such, and as to the effect upon the constitutionality of the registration provision of the prohibitions and penalties attendant upon non-registration and of the supervisory powers given to the Commission in the event of registration, including the effect of Section 11. And I think that the trial court could reasonably conclude that these rulings would be in respect of statutory and factual patterns enough like those involved in the local suits to make the rulings in the New York suit practically fruitful for simplification, and perhaps for disposition, of the local suits, even though the rulings in the New York suit would not be strictly *res judicata* as to the local suits. I conclude therefore that the court's decision was actuated by proper and sufficient representations and data.

Was the court's decision reasonable in respect of the rights of all concerned? As to the length of the stay, it is suggested that it is never to end except upon the determination in the New York suit of the validity of the Act by the Supreme Court of the United States, or until the termination of that suit otherwise. The stay motion was in such terms, literally, made, but it was not in such terms granted. It was "Ordered . . . that further proceedings . . . be and are hereby stayed, upon the terms and conditions as set forth in the Opinion of this Court . . . ." The opinion indicates that the stay was granted for a definite purpose and upon definite conditions. The purpose was the saving of a "great amount of labor, time and expense" through a prior decision in the New York suit, which "even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cases and assist in the determination of the questions of law involved." [4] The conditions were "a diligent and active prosecution of the Electric Bond and Share case." Moreover the court said that "In view of their assurances [the court was referring to the announcements, above referred to,[5] of the Commission, the Attorney General and the Postmaster General] given before the filing of these suits, however, it would hardly seem necessary

---

[4] Presumably the court had in mind the saving of labor, time and expense not only for the parties and counsel but also for itself, a court of the same sovereignty as, and a court of parallel jurisdiction with, the United States District Court for the Southern District of New York.

[5] In footnote 1.

to issue a formal injunction, unless the plaintiffs insist upon it." The plaintiffs did not insist upon it and no formal injunction was entered; but clearly the stay was conditioned upon non-enforcement of the Act. The order is interlocutory in nature and therefore remains within the control of the court which made it. If, during the progress of the New York suit it is made to appear to the trial court that the purpose of the stay will not be served, or that its conditions are not being fulfilled, the trial court may, and I think it should be assumed will, terminate the stay. Thus, if it is made to appear, as the New York suit progresses, that the issues of fact and law therein are not to be what, at the time of the stay order, the trial court reasonably concluded they would be, so that rulings fruitful for the local suits are improbable and labor, time and expense therefore not to be saved, or if it is made to appear that the New York suit is not being diligently prosecuted by the Commission or that, for whatever reason, it is not going forward actively, then the trial court will, I have no doubt, terminate the stay. Or it should be made to appear that the assurances of non-enforcement are not being adhered to, the trial court will impose an injunction, or terminate the stay.[6]

But the terms of the stay were such that, if its conditions remain fulfilled and its purpose continues probable of accomplishment, it may operate for a substantial period of time, and thus the plaintiffs' day in court in their own cases may be substantially postponed. But I am unable to agree that this makes the stay unreasonable. The right of the plaintiffs to be heard with reasonable promptness was not the only right involved in the administrative problem confronting the trial court. There was also the right of third parties—the plaintiffs and defendants in the various cases, civil and criminal, in the usual course of the judicial business of the Supreme Court of the District of Columbia—to seasonable trials; and there was, in addition, the right of the public through its agents, the defendants, to an adequately presented defense of the cases brought by the plaintiffs locally and of the many other similar cases not unlikely to be tried locally, and to an adequate and comprehensive test of the constitutionality, in the New York suit, of a statute of great public significance.

Whatever solution of the administrative problem the trial court reached would affect all of these rights. It was inevitable from the very nature of the problem that at least one of them would be to some extent impaired: The exercise of the plaintiffs' right to a reasonably prompt day in court had, obviously, to a large extent been made unnecessary by the agreement of the defendants not to enforce the statute—this agreement to be made good by injunction if necessary; that is to say, the plaintiffs had in large part gained by this agreement what they would have gained by immediate and successful prosecution of their causes. Nevertheless, it is obvious also that their right to a reasonably prompt day in court (to the extent it may have been necessary for a ruling in respect of the mere existence of the statute and its cloud on their business, irrespective of enforcement—assuming in the plaintiffs' favor that there would have been a case or controversy for such a ruling) was impaired, through postponement, by the trial court's decision granting the stay. But a decision to the contrary, denying the stay, would have impaired the other rights involved: For the court to deny the stay was for the court to bring on for trial the plaintiffs' cases, complex and burdensome, not unlikely the five similar cases already filed locally, not unlikely forty-nine others filed elsewhere but without jurisdiction of the defendants, and not inconceivably many more. Under the plaintiffs' theory each utility must in its own protection present its own case on its own facts. This would be to clot the flow of justice and to defer the day in court of the third party plaintiffs and defendants seeking to litigate their causes, civil and criminal; and this would be to engage the Commission and its counsel on so many legal battle fronts at once as likely to make inadequate their preparation and presentation of a defense in the local suits, and their preparation and presentation of a plaintiff's case in the comprehensive test suit in New York. Moreover, in no effective manner could such impairment of the rights of third parties and of the public be minimized by the plaintiffs or by the court as was impairment of the plaintiffs' right minimized by the defendants—so far as enforcement of the statute is concerned—through the agreement of non-enforcement, and, virtually by the court, through in-

---

[6] It was suggested by the plaintiffs that possible successors in office of the defendants might not feel bound by the present assurances of non-enforcement.

junction. Even a middle course ruling—allowing the defendants short stays from time to time in the local cases rather than ruling categorically for or against the stay motion—would have been a ruling differing largely in form rather than in substance from the granting of the stay, and would hardly better have protected the plaintiffs. In short, it was inevitable that whichever way the trial court ruled, it would to some extent impair some of the rights involved. In these circumstances it cannot, I think, be said that the trial court was guilty of an abuse of discretion in granting the stay, for the same reasoning would make it guilty of abuse if it denied the stay, or took the middle course; this is *reductio ad absurdum;* the court could not decide at all.

I think no useful purpose would be served by a detailed discussion of the many authorities presented in the briefs on both sides. They differ so substantially in their facts from the instant problem that they do not constitute persuasive rulings. Indeed, there is no real dispute as to the ultimate proposition here involved, that is to say, as to the existence of power in a trial court, provided it acts upon proper and adequate data and reasonably, to solve according to discretion, rather than rule, and free of review, an administrative problem involving conflicting rights. In Kansas City So. Ry. v. United States, 282 U.S. 760, 763, 51 S.Ct. 304, 306, 75 L.Ed. 684, the Supreme Court said:

"The question is thus one for the sound discretion of the District Court, in which such a suit is brought, to determine whether it should be permitted to continue or proceedings therein should be stayed, pending the final outcome of an earlier suit for the same purpose, to the end that there may not be a multiplicity of suits without substantial reason."

I think that the decision of the trial court—permitting an adequate and comprehensive test of an act the meaning and constitutionality of which it was important to the public at large to have determined, but permitting this upon terms which gave to the plaintiffs in large part what they would have gained by immediate and successful trial of their causes (thereby minimizing the consequence of postponement thereof), probably saving the parties and counsel and the courts much duplication of labor and expense, and keeping the Supreme Court of the District of Columbia free to carry on, in the usual course, its general judicial business—was a reasonable decision, properly within the scope of the trial court's discretion.

I think that the order of the trial court should be sustained.